MORAN LAW GROUP, INC.
CATHLEEN COOPER MORAN, I.D. #83758
RENÉE C. MENDOZA, I.D. #139939
1674 N. Shoreline Blvd., Suite 140
Mountain View, CA 94043-1375
Tel.: (650) 694-4700
Fax: (650) 694-4818
E-mail: Cathy@moranlaw.net

Attorney for Debtors

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

In Re: ) Chapter 7
)
ANDREW J. KETTLE aka ANDY ) Bankruptcy No. 09-52516
KETTLE; AND HEATHER P. KETTLE )
aka HEATHER P. GALBRAITH, ) Date: April 1, 2010
) Time: 1 p.m.
) Place: 3070
)
Debtors. )
_____ ) HON. MARILYN MORGAN

**MOTION TO COMPEL ABANDONMENT**

The debtors, Andrew and Heather Kettle move the court for an order compelling the abandonment of their home by the trustee.

**FACTS**

1. This case was commenced on April 5, 2009. A 341 meeting was held on May 26, 2009.

2. The debtors claimed a homestead exemption of $75,000 in their home at 6025 Meridian Avenue, San Jose (the "Home"). The schedules valued the home at $620,000.

3. The Home is subject to liens as follows:

    a. Property taxes                              4,104

    b. First deed of trust-Wells Fargo         136,089

|   |    |                                  |         |
|---|----|----------------------------------|---------|
| 1 | c. | Home equity line- National City  | 195,182 |
| 2 | d. | Kawasaki - Abstract of Judgment  | 109,000 |
| 3 | e. | Attorney Recovery Systems -Abstract | 67,462 |
| 4 | f. | Wells Fargo- Abstract            | 110,000 |
| 5 | g. | LC Freed- Abstract               | 43,807  |
| 6 |    | **TOTAL**                        | **665,644** |

4. Post petition, Debtors have made regular payments on the first and second mortgages and those obligations are current. In addition, the Debtors made the property tax payments that have come since the case was commenced.

5. The involuntary liens secured by the Home have not received payment post petition and continue to accrue interest at the California judgment rate of 10%. The involuntary liens total $330,269. A year's worth of interest on those liens adds $33,027 to the debts secured by the Home.

6. This court authorized employment of a real estate broker to handle the sale of the Home on September 9, 2009. The Home was listed on the multiple listing service on or about September 28, 2009 and has been continuously on the market since that time.

7. The original listing price was $699,950; on February 25, 2010, after 150 days on the market, the price was reduced to $ 674,950. A sale at either of these prices would be insufficient to pay the secured debts and the Debtors' homestead, much less costs of sale, costs of administration, or unsecured creditors.

8. The terms of the court's order directing the Debtors to cooperate in the sale of their Home require 24 hour notice to them of a showing of the house to prospective buyers. No such notice has been given to Debtors since the first of this year. Debtors therefore believe that no would-be buyers have inspected the home in the two and a half months of 2010, even at the reduced price.

## ARGUMENT

**The property is of inconsequential value and benefit to the bankruptcy estate.**

Bankruptcy Code Section 554 (b) provides:

"On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

In the present case, the Debtor's Home offers no value or benefit to the estate. The secured claims and post petition interest on the involuntary claims exceed the current (reduced) listing price of the home. The debtors are entitled to payment of a homestead of $75,000 from any sale of the property. It has been generously exposed to the market and no sale has resulted. No sale can reasonably be expected that would pay the costs of sale, the secured claims and the debtors' homestead.

In *Ayers,* 137 B.R. 397, 401 (Bankr. Mt. 1992), the court put " the matter of abandonment under § 554 in proper perspective in a Chapter 7 liquidation.

> Numerous courts have recognized that where the estate has no equity in a property, and the estate is to be liquidated, abandonment will virtually always be appropriate, because no unsecured creditor could benefit from its administration. *In re Cunningham, 48 Bankr. 509 (Bankr. M.D. Tenn. 1985)*; *Matter of Karl A. Neise, Inc., 31 Bankr. 409 (Bankr. S.D. Fla. 1983)*; *In re Anspach, 13 Bankr. 208 (Bankr. E.D. Pa. 1981)*; *In re Brannan, 5 Bankr. 505 (D. V.I. 1980). See also In re Air Vermont, Inc., 41 Bankr. 486 (Bankr. D.Vt. 1984). Id. at 610.*

There is no equity in the Home and therefore no benefit to unsecured creditors from attempts to sell it.

**Trustees should not administer property where no benefit to unsecured creditors will result**. The Chapter 7 Trustee's Handbook, Chapter 6 A provides

> ....
>
> A chapter 7 case should be administered to maximize and expedite dividends to creditors and facilitate a fresh start for the debtors entitled to a discharge. A trustee should not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals, or unduly delay the resolution of the case. Chapter 7 trustees must be guided by this fundamental principle when acting as trustee. Accordingly, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to creditors before administering a case as an asset case. *http://tinyurl.com/yzzq3na*

# CONCLUSION

The Home has been adequately exposed to the market to assure all parties that it is not sufficiently valuable for a sale of the property to produce net proceeds, after the costs of sale, to pay the secured creditors and the Debtors' homestead. The trustee's duties include a duty to facilitate a fresh start for debtors entitled to a discharge. While these debtors have received their discharge, they still encounter uncertainty because of the fruitless efforts of the trustee to make something out of nothing with respect to the Home. The property is of no value or benefit to the estate and the trustee should be ordered to abandon the property.

MORAN LAW GROUP

Date: _____  _____
CATHLEEN COOPER MORAN
Attorney for Andrew and Heather Kettle